TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00039-CR







Sheldon Wayne Oku, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT


NO. CR97-055, HONORABLE CHARLES RAMSAY, JUDGE PRESIDING







 Appellant Sheldon Wayne Oku appeals from his conviction for the offense of
aggravated assault with a deadly weapon. See Tex. Penal Code Ann. § 22.02(a)(2) (West 1994). 
The jury assessed appellant's punishment at imprisonment for fifteen years and a fine of $5,000.

 Appellant asserts that the State was improperly allowed to impeach a defense
witness and that a juror who served was disqualified for service as a matter of law. We will
overrule appellant's points of error and affirm the judgment of the trial court.

 Appellant was charged with intentionally, knowingly, and recklessly causing bodily
injury to his step-daughter by detonating an explosive device that was alleged to be a deadly
weapon. Appellant served in Vietnam and was a demolitions expert familiar with explosive
devices. He had made and for some time had possessed a grenade. Appellant and his wife were
having marital difficulties, and she intended to get a divorce. Appellant was depressed and
considering suicide. During an argument, appellant threatened his wife with the grenade. She, 
her daughter, and their son escaped from the house. While they were running on the driveway,
the grenade exploded. As a result of the explosion, appellant's hand was blown off and his wife
and daughter were injured.

 In his second point of error, appellant complains that the trial court erred in
allowing the State to impeach a defense witness by asking "have you heard" questions over
appellant's timely objection. More specifically, appellant argues that the witness's volunteered
remark did not place in issue appellant's reputation for being a peaceable, law abiding citizen. 
On the other hand, the State contends on appeal that the witness's statement did place in issue
appellant's reputation for "kindness and peaceableness." At trial, the State argued that the
witness's testimony placed appellant's reputation for being "peaceable and law abiding" in issue.

 The controversy is about a defense witness's testimony at the guilt-innocence phase
of the trial. She testified on direct examination:


Q. Did Sheldon tell you what was wrong?


A. Yes, he told me that his wife had left him and that he wanted to commit
suicide. And, of course, I was devastated, but because he'd always been a
very kind, kind person who had always gone out of his way to help people on
the campus -- and so we talked about it and he told me that she had left and 
taken the children and belongings and everything and so I said --



 The State's cross-examination follows:



(Proceedings at the bench:)


MR. WALDRIP:  She answered a question in response to defense counsel that he was a very kind and gentle person to everybody on campus, and there are two
instances that I'm aware of that I would like to ask her about just in regard to
his reputation. Basically, I think that opens the door to questions on
reputation for whether or not he's peaceable and law-abiding.


THE COURT:  You may ask those questions.


* * * *



MR. FRIESENHAHN:  Judge, we would object to that. (1)


THE COURT:  You've opened the door. She said it.


(Proceedings in open court:)


By Mr. Waldrip:


Q. Now, you've mentioned that Mr. Oku is very -- And I don't want to put
words in your mouth, so just correct me --


A. That's okay.


Q. -- if I'm wrong, okay? -- that's he's a very kind and gentle man to every man
that came in the printing shop and on the Trinity campus?


A. Yes.


Q. And that was basically the extent that you knew him or that you saw him; is
that correct?


A. Yes.


* * * *



Q. Okay. But what you knew of Mr. Oku was his reputation on campus and in
that community and your opinion of him to be a kind and gentle person?


A. Yes.


Q. Were you aware or had you heard that in June or July of '96 that Mr. Oku had
taken Ms. Oku to the ground and held a dumbbell over her head and brought
it to the floor to scare her?


A. No, I did not hear that.


Q. Okay. And were you also aware or had you heard that the night before that
she did move out, approximately a week before Thanksgiving, that she did not
feel safe to sleep because of some threats that he had made, including holding
a mag light, a black big mag light flashlight over her head and threatened to
hit her with it? Were you aware of that situation?


A. He did tell me about that. That's not what he said happened.


Q. Okay.


A. He told me about that.


Q. Okay. But you weren't aware that it occurred as I explained it?


A. No, I was not.


Q. Okay. If it were true, as I've explained those two situations, would that
change your opinion of Mr. Oku's reputation?


A. No.


MR. WALDRIP: Okay. Pass the witness.



 We must decide whether the witness's non-responsive, volunteered statement that
appellant was kind and helpful to people on the campus placed appellant's reputation for being a
peaceable and law abiding citizen in issue. If appellant's reputation were placed in issue, the State
could test the witness's knowledge of appellant's reputation in the community by asking "have you
heard" questions in good faith. (2) See Hedicke v. State, 779 S.W.2d 837, 842 (Tex. Crim. App.
1989); Rutledge v. State, 749 S.W.2d 50, 53 (Tex. Crim. App. 1988); Self v. State, 513 S.W.2d
832, 838-39 (Tex. Crim. App. 1974); Brown v. State, 477 S.W.2d 617, 620 (Tex. Crim. App.
1972).

 In a number of cases, similar testimony was found insufficient to place a
defendant's reputation in issue so as to allow cross-examination with "have you heard" questions. 
See, e.g., Rutledge, 749 S.W.2d at 51 (Tex. Crim. App. 1988) (witness testified defendant was
impeccable, never drank, didn't curse, and was just a nice person); Stephens v. State, 660 S.W.2d
85, 86-87 (Tex. Crim. App. 1983) (wife of defendant testified her husband loved her family,
supported family, held a steady job, and participated on a track team, basketball team, and
community cleanup committee); Nixon v. State, 653 S.W.2d 443, 444 (Tex. Crim. App. 1983)
(defendant's supervisor testified he was hard worker, ideal employee, and "a very kind guy" who
got along with everyone and often volunteered to help others); Smith v. State, 763 S.W.2d 836,
840 (Tex. App.--Dallas 1988, pet ref'd) (witness testified "I have never known him [defendant]
to be in any kind of trouble"); Powell v. State, 663 S.W.2d 465, 466-67 (Tex. App.--Houston [1st
dist.] 1983, no pet.) (witness testified defendant was "nice person" who didn't create problems
around apartment complex).

 We conclude that the witness's testimony in this case did not place appellant's
reputation for being a peaceable law abiding citizen in issue. Therefore, the State should not have
been allowed to ask the witness "have you heard" questions.

 In its brief, the State points out that before asking the "have you heard" questions,
"the prosecutor gave the witness an opportunity to clarify whether she was referring to appellant's
reputation or just her opinion. [The witness] affirmed that she was speaking of both his reputation
on campus and her opinion of him when she referred to appellant as a kind person who helps
others on campus." The State implies that its questions on cross-examination, allowing the
witness to "clarify" her testimony, gave the State the right to ask "have you heard" questions. 
The State is wrong because "[t]he State cannot place the accused's character in issue by its own
cross-examination and then justify impeachment by 'have you heard' questions based on the
testimony elicited on cross-examination." Livingston v. State, 589 S.W.2d 395, 400 (Tex. Crim.
App. 1979); see also Els v. State, 525 S.W.2d 11, 13-16 (Tex. Crim. App. 1975); Childers v.
State, 241 S.W. 1029, 1032-33 (Tex. Crim. App. 1922); Smith, 763 S.W.2d at 843.

 Although the State should not have been allowed to ask "have you heard"
questions, we must determine from the review of the record whether the error in asking the
questions requires reversal of the judgment. The State argues that, even if we find error, the error
was harmless. Other than constitutional error, any error, defect, irregularity, or variance that
does not affect the substantial rights of a defendant must be disregarded. See Tex. R. App. P.
44.2(b). Later in the trial, after the "have you heard" questions had been asked, appellant
testified in his own defense. He testified that he loved his wife and did not intend to harm her. 
In view of appellant's testimony, to rebut his testimony on lack of intent to injure, he could have
been cross-examined about the subject of both "have you heard" questions. His testimony did
relate to one of the incidents. On direct examination, appellant referred to the dumbbell incident
that was the subject of one of the "have you heard" questions. On cross-examination, appellant
admitted to the occurrence of the "dumbbell incident." We hold that, in the context of the record,
the asking of the "have you heard" questions did not affect the substantial rights of appellant and
therefore the error was harmless. Appellant's second point of error is overruled.

 In his first point of error, appellant asserts that the judgment must be reversed
because one of the jurors who participated in determining appellant's guilt and punishment was
not a citizen of Comal County and was therefore disqualified to serve as a juror as a matter of
law.

 It is undisputed that one of the jurors was not a citizen of Comal County. This was
not discovered until after the trial, and the jury's verdict had been received. Appellant relies upon
Mayo v. State, 971 S.W.2d 464 (Tex. App.--Fort Worth 1998, pet. granted) and argues that it is
directly in point. However, since this case was submitted, the Second Court of Appeals' judgment
in Mayo has been reversed. See Mayo v. State, Nos. 1010-98 and 1011-98 (Tex. Crim. App.
Sept. 15, 1999). The Court of Criminal Appeals rejected the court of appeals' reasoning and held
that: "[T]he requirement that a juror be a county citizen is not an absolute requirement that
cannot be waived." Id. at p. 8. Just as in Mayo, the record in this case shows that appellant did
not challenge the juror on the ground that he was not a citizen of Comal County at the time of
trial. Thus, appellant waived his right to challenge the juror about his residency on appeal. 
Accord Gaona v. State, 733 S.W.2d 611, 617-18 (Tex. App.--Corpus Christi 1987, pet. ref'd);
Matthias v. State, 695 S.W.2d 736, 740 (Tex. App.--Houston [14th Dist.] 1985, pet. ref'd).

 Appellant, anticipating the possible overruling of the Mayo decision, urges that the
unqualified juror's service on the jury that convicted him was so harmful as to require reversal
of the judgment. A juror's disqualification for not being a citizen of the county where he serves
is not an absolute disqualification. See Tex. Code Crim. Proc. Ann. arts. 35.19, 44.46 (West
1989 & Supp. 1999). When an absolutely disqualified juror serves, if that disqualification is not
brought to the attention of the trial court until after the verdict is entered, a defendant must show
"significant harm" resulted from the juror's service before the judgment will be reversed. See
id. art 44.46(2). In this case, the juror had moved across the street that divided the counties and
did not know that his new residence was not in Comal County. He did not intentionally deceive
the court or the parties. Appellant makes an additional complaint that the juror failed to disclose
that he had previously been charged with a controlled substance offense. The juror testified about
the controlled substance charge at the motion for new trial: "I had an attorney. One day I
showed up at his office and he said that it was dropped or something like that. He told me I could
go home and not worry about it." The record fails to show any other evidence relating to the
alleged controlled-substance offense. In this case where the juror was not absolutely disqualified,
appellant would logically be required to meet or exceed the "significant harm" test applicable
when an absolutely disqualified juror serves. We hold that appellant has failed to show that he
suffered "significant harm" because of the service of the juror who was not a citizen of Comal
County.

 A defendant's conviction alone does not constitute "significant harm" within the
meaning of article 44.46. See Read v. State, 965 S.W.2d 74, 77 (Tex. App.--Austin 1998, no
pet.); Hernandez v. State, 952 S.W.2d 59, 71 (Tex. App.--Austin 1997, pet. granted), vacated on
other grounds, 957 S.W.2d 851 (Tex. Crim. App. 1998). We hold that appellant has failed to
show that he suffered "significant harm" because of the service of the juror who was not a citizen
of Comal County. Appellant's first point of error is overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Jones, B. A. Smith and Dally*

Affirmed

Filed: October 7, 1999

Do Not Publish






* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The State makes no claim that the issue presented was not preserved for appellate
review. In the context of the record, it appears that the grounds for appellant's trial objection
were clear and understood by the trial court and the State. We conclude that the alleged error was
properly preserved for our review.
2. The methods of proving character by reputation or opinion are now specified by the
rules of evidence. See Tex. R. Evid. 405. "Rule 405 controls how the character of a person
other than a witness is to be proven when such evidence is admissible." 1 Steven Goode, Olin
Guy Wellborn & M. Michael Sharlot, Guide to the Rules of Evidence: Civil and Criminal, § 405,
pp. 199-200 (Texas Practice 2d ed. 1993). Also, Rule 405 makes one significant change in past
practice regarding the use of opinion testimony. See id. p. 201. Where formerly reputation
evidence was the only permissible technique for proof of character, a proponent will now be
permitted also to offer opinion evidence. See id. When a witness has testified to a defendant's
reputation in the community, that witness's credibility may be tested on cross-examination by
"have you heard" questions relating to that reputation if the questions asked are based in good
faith.



ssible overruling of the Mayo decision, urges that the
unqualified juror's service on the jury that convicted him was so harmful as to require reversal
of the judgment. A juror's disqualification for not being a citizen of the county where he serves
is not an absolute disqualification. See Tex. Code Crim. Proc. Ann. arts. 35.19, 44.46 (West
1989 & Supp. 1999). When an absolutely disqualified juror serves, if that disqualification is not
brought to the attention of the trial court until after the verdict is entered, a defendant must show
"significant harm" resulted from the juror's service before the judgment will be reversed. See
id. art 44.46(2). In this case, the juror had moved across the street that divided the counties and
did not know that his new residence was not in Comal County. He did not intentionally deceive
the court or the parties. Appellant makes an additional complaint that the juror failed to disclose
that he had previously been charged with a controlled substance offense. The juror testified about
the controlled substance charge at the motion for new trial: "I had an attorney. One day I
showed up at his office and he said that it was dropped or something like that. He told me I could
go home and not worry about it." The record fails to show any other evidence relating to the
alleged controlled-substance offense. In this case where the juror was not absolutely disqualified,
appellant would logically be required to meet or exceed the "significant harm" test applicable
when an absolutely disqualified juror serves. We hold that appellant has failed to show that he
suffered "significant harm" because of the service of the juror who was not a citizen of Comal
County.

 A defendant's conviction alone does not constitute "significant harm" within the
meaning of article 44.46. See Read v. State, 965 S.W.2d 74, 77 (Tex. App.--Austin 1998, no
pet.); Hernandez v. State, 952 S.W.2d 59, 71 (Tex. App.--Austin 1997, pet. granted), vacated on
other grounds, 957 S.W.2d 851 (Tex. Crim. App. 1998). We hold that appellant has failed to
show that he suffered "significant harm" because of the service of the juror who was not a citizen
of Comal County. Appellant's first point of error is overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Jones, B. A. Smith and Dally*

Affirmed

Filed: October 7, 1999

Do Not Publish






* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The State makes no claim that the issue presented was not preserved for appellate
review. In the context of the record, it appears that the grounds for appellant's trial objection
were clear and understood by the trial court and the State. We conclude that the alleged error was
properly preserved for our review.
2. The methods of proving character by reputation or opinion are now specified by the
rules of evidence. See Tex. R. Evid. 405. "Rule 405 controls how the character of a person
other than a witness is to be proven when such evidence is admissible." 1 Steven Goode, Olin
Guy Wellborn & M. Michae